UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICK-FIL-A, INC.,<br><br>Plaintiff,<br><br>v.<br><br>AGRI STATS, INC., ET AL.,<br><br>Defendants. | Case No. 1:20-cv-7205<br><br>**Jury Trial Demanded**<br>(Related to *In re Broiler Chicken Antitrust Litigation* – Case No. 1:16-cv-08637) |

## COMPLAINT

1. Plaintiff Chick-fil-A, Inc. ("Plaintiff" or "CFA, Inc.") is a Georgia corporation with its principal place of business in Fulton County, Georgia. CFA, Inc. develops and supports a chain of retail quick-service restaurants specializing in a boneless breast of chicken sandwich, known as the Chick-fil-A® Chicken Sandwich.

2. Since CFA, Inc. was founded by Truett Cathy in 1964, it has endeavored to conduct business with an emphasis on business ethics such as fairness, honesty, loyalty, and respect.

3. The majority of Chick-fil-A branded restaurant businesses are owned and operated by independent franchisees, known as Operators. CFA, Inc. also operates various Chick-fil-A and other restaurants itself from time to time. Certain affiliates of Chick-fil-A operate certain Dwarf House restaurants and Truett's Grill restaurants, which are licensed to sell Chick-fil-A products. CFA, Inc. has also granted licenses to certain Chick-fil-A licensees. Collectively, these Chick-fil-A branded restaurants make up the "CFA Restaurant Group."

4. Broiler chicken is the central ingredient in many of the proprietary products served at each Chick-fil-A branded restaurant, which include, but are not limited to, the Chick-fil-A®

1

Chicken Sandwich, the Grilled Chicken Sandwich, the Spicy Chicken Sandwich, and the Chick-fil-A® Nuggets. These proprietary chicken products have directly contributed to the success and growth of the CFA Restaurant Group into one of the nation's largest quick service restaurant chains.

5. To ensure consistency in taste and quality of products served across multiple locations spanning multiple states, CFA, Inc. negotiated and contracted directly with certain Defendants for the production and supply of its chicken according to CFA, Inc.'s unique recipes and specifications. These negotiations and contracts governed the price at which certain Defendants agreed to supply the CFA Restaurant Group with broiler chicken.

6. CFA, Inc. provided certain Defendants with instructions regarding each step of the preparation and packaging process for the chicken products sold by the CFA Restaurant Group, including the recipe for those products and specific requirements for packaging and labeling those products.

7. CFA, Inc. also utilized distributors such as Armada Supply Chain Solutions, LLC and Armada Warehouse Solutions, LLC (collectively "Armada"), Golden State Foods Corp. and Quality Custom Distribution Services, Inc. (collectively "GSF/QCD"), and Meadowbrook Meat Company, Inc. and McLane Foodservice, Inc. (collectively "MBM/McLane"), to serve the CFA Restaurant Group. For purposes of this action, Armada, GSF/QCD, and MBM/McLane have all assigned their claims arising out of these transactions to CFA, Inc.

8. CFA, Inc. brings this action on its own behalf, and additionally and alternatively, as assignee of Armada, GSF/QCD, MBM/McLane, and their affiliates (collectively "Assignors"). All references in this Complaint to "CFA, Inc." or "Plaintiff" include Chick-fil-A, Inc.'s Assignors.

9. CFA, Inc. and/or its Assignors purchased billions of dollars worth of broiler chicken from Defendants and/or their co-conspirators throughout the relevant period at prices that were artificially inflated due to the conduct outlined below. As such, CFA, Inc. and the CFA Restaurant Group sustained injury and damages to their businesses as a proximate result of the antitrust violations and other unlawful activities alleged in this Complaint.

10. CFA, Inc. brings this action for damages under the federal antitrust laws against the defendants identified below and incorporates by reference Direct Action Plaintiffs' Consolidated Complaint and Demand for Jury Trial [ECF Nos. 3924, 3922] filed in *In re Broiler Chicken Antitrust Litigation*, 1:16-cv-08637 (N.D. Ill.) on October 23, 2020.[1]

11. CFA, Inc. joins Section II of the Direct Action Plaintiffs' Consolidated Complaint and Demand for Jury Trial [ECF Nos. 3924, 3922], adding the following to specify CFA, Inc.'s causes of action and the Defendants and Co-Conspirators in CFA, Inc.'s action.

---

[1] Pursuant to the Court's orders in *In re Broiler Chicken Antitrust Litig.*, 1:16-cv-08637, the Direct-Action Plaintiffs filed "a consolidated complaint" [ECF Nos. 3778, 3652, 3525] containing "all the allegations the Direct-Action Plaintiffs make against all Defendants" on October 23, 2020 [ECF Nos. 3924, 3922]. The Court's orders did not address how DAPs seeking to file new complaints after the filing of Direct Action Plaintiffs' Consolidated Complaint and Demand for Jury Trial should proceed. In an effort to promote efficiency, Plaintiff files this abbreviated pleading that incorporates by reference and adopts the allegations set forth in Direct Action Plaintiffs' Consolidated Complaint and Demand for Jury Trial. If the Court prefers a different form or process, Plaintiff will withdraw this pleading and proceed according to the Court's direction.

| Plaintiff Name | Operative Complaint (Reference is to Sealed Version, if applicable) | Named Defendants (Not Previously Dismissed) | Named-Co-Conspirators (if any) [2] | Causes of Action |
|---|---|---|---|---|
| Chick-fil-A, Inc. | TBD | Agri Stats; Case; Claxton; Foster Farms; Harrison; House of Raeford; Keystone Foods; Koch; Mar-Jac; Mountaire; O.K. Foods; Perdue; Pilgrim's Pride; Sanderson; Simmons; Tyson; Wayne | Amick; Fieldale; George's; Marshall Durbin; Peco | Count I (Sherman Act Claim for all Anticompetitive Conduct); Count II (Sherman Act Claim for Output Restriction, Pled in the Alternative to Count I); Count III (Sherman Act Claim for GA Dock Manipulation, Pled in the Alternative to Count I); Count LVII (Sherman Act Claim for Bid Rigging, Pled in the Alternative to Count I) |

12. In addition to the above information, CFA, Inc. also adds the following additional count to Direct Action Plaintiffs' Consolidated Complaint and Demand for Jury Trial [ECF Nos. 3924, 3922].

## COUNT LVII
## VIOLATION OF 15 U.S.C. § 1
### (AGAINST CASE, CLAXTON, KOCH, MAR-JAC, PERDUE, PILGRIM'S PRIDE, SANDERSON, AND TYSON FOR BID-RIGGING)

13. CFA, Inc. incorporates by reference and adopts the allegations set forth in Direct Action Plaintiffs' Consolidated Complaint and Demand for Jury Trial [ECF Nos. 3924, 3922], and the allegations in the superseding indictment returned by the grand jury in *United States v. Jayson Jeffrey Penn, et al.*, 20-cv-152 (D. Colo.) [ECF No. 101], on October 6, 2020.

---

[2] By virtue of Plaintiff previously being a member of the putative class of direct purchasers, Plaintiff was also a member of the settlement classes that were certified with respect to Fieldale Farms Corporation, George's, Inc. and George's Farms, Inc., Peco Foods, Inc., and Amick Farms, LLC. While Plaintiff has not named these corporations as defendants, Plaintiff nonetheless has named these corporations as co-conspirators in order to describe their conduct and contributions to the unlawful conspiracy.

14. The Superseding Indictment describes bid-rigging conduct that specifically affected one of the victims identified in the Superseding Indictment by the pseudonym QSR-5.

15. According to the Superseding Indictment, on or about February 11, 2014, QSR-5 announced plans to serve antibiotic free or No Antibiotics Ever ("NAE") broiler chicken meat at all of QSR-5's restaurants within the following five years.

16. Following QSR-5's announcement, a number of Defendants communicated via phone and text message in order to share and coordinate confidential bidding and pricing information in connection with QSR-5's request for bids relating to its planned transition to only serving ABF broiler chicken meat.

17. CFA, Inc. is the victim identified in the Superseding Indictment by the pseudonym QSR-5.

18. CFA, Inc. was directly and proximately injured by the bid-rigging conduct described above and in the Superseding Indictment.

19. Defendants' unlawful contract, combination or conspiracy had the following direct, substantial, and reasonably foreseeable effects on commerce in the United States: (1) prices charged to, and paid by, CFA, Inc. for chicken were artificially raised, fixed, maintained, or stabilized at supra-competitive levels; (2) CFA, Inc. was deprived of the benefits of free, open, and unrestricted competition in the United States chicken market; and (3) competition in establishing the prices paid for chicken in the United States was unlawfully restrained, suppressed, or eliminated.

20. Defendants' above-described anticompetitive activities directly and proximately caused injury to CFA, Inc. in the United States.

21. As a direct and proximate result of Defendants' above-described unlawful conduct, CFA, Inc. paid artificially inflated prices for chicken.

22. As a direct and proximate result of Defendants' above-described anticompetitive conduct, CFA, Inc. was damaged in its business or property by paying prices for chicken that were higher than they would have been but for Defendants' unlawful conduct, which has resulted in an amount of ascertainable damages to be established at trial.

23. Defendants' anticompetitive conduct described in this Complaint constitutes a per se violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Alternatively, Defendants' conduct is also unlawful under the Rule of Reason standard of antitrust liability because at all relevant times Defendants possessed significant market power in the market for broilers and their conduct had actual anticompetitive effects with no or insufficient offsetting pro-competitive justifications.

## **PRAYER FOR RELIEF**

WHEREFORE, CFA, Inc. respectfully requests that the Court:

A. Enter joint and several judgments against Defendants in favor of CFA, Inc.;

B. Award CFA, Inc. damages against Defendants in a joint and several judgment for an amount to be determined at trial to the maximum extent allowed under the claims stated above as well as treble damages, any other enhancement of damages, attorneys' fees, expenses, and costs as provided by law;

C. Award CFA, Inc. its pre- and post-judgment interest as provided by law, with such interest to be awarded at the highest legal rate;

D. Award CFA, Inc. its attorneys' fees, litigation expenses, and costs, as provided by law, including the federal antitrust laws; and

E. Grant CFA, Inc. such other and further relief that the Court may deem just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, CFA, Inc. demands a trial by jury on all issues so triable.

Respectfully Submitted,

Dated: December 4, 2020

/s/ Matthew J. Calvert
Matthew J. Calvert (*pro hac vice* pending)
HUNTON ANDREWS KURTH LLP
Bank of America Plaza, Suite 4100
600 Peachtree Street NE
Atlanta, GA 30308
(404) 888-4000
mcalvert@huntonak.com

Ryan P. Phair (#479050)
Craig Y. Lee (admitted *pro hac vice*)
Emily K. Bolles (admitted *pro hac vice*)
Christopher C. Brewer (admitted *pro hac vice*)
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington, D.C. 20037-1701
(202) 955-1500
rphair@huntonak.com
craiglee@huntonak.com
ebolles@huntonak.com
brewerc@huntonak.com

John S. Martin (admitted *pro hac vice*)
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219-4704
(804) 788-8200
marinj@huntonak.com

Julie B. Porter (#6243787)
SALVATORE PRESCOTT PORTER
& PORTER, PLLC
1010 Davis Street
Evanston, IL 60201
(312) 283-5711
porter@spplaw.com

*Attorneys for Plaintiff Chick-fil-A, Inc.*